IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DOCKET NO. 3:07-cv-00021-FDW

| | | |
|---|---|---|
| JOHNNIE MAE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | AMENDED FINAL |
| | ) | ORDER ON PRETRIAL |
| | ) | CONFERENCE |
| | ) | |
| vs. | ) | |
| | ) | |
| THE PRESBYTERIAN HOSPITAL | ) | |
| d/b/a PRESBYTERIAN WOUND CARE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to the provisions of Rule 16 of the Federal Rules of Civil Procedure, and the Standing Order Governing Civil Case Management before the Honorable Frank D. Whitney, this Amended final Order on Pretrial Conference is being submitted to the Court.

I. **STATEMENT OF THE CASE**

A. The parties stipulate to the following Statement of the Case:

Plaintiff, a former employee of Defendant, alleges that Defendant discriminated against her by terminating her employment based on her race, African-American, and her age, over 40 years of age. Plaintiff further alleges that Defendant, in terminating her, retaliated against her for reporting the alleged discrimination to the Defendant's Employee Relations department. Defendant alleges that Plaintiff was an at-will employee who was terminated for legitimate, non-discriminatory reasons. Defendant further alleges that it did not retaliate against Plaintiff at any time during or after her employment with Defendant.

II. **STIPULATIONS OF THE PARTIES**

A. It is stipulated that all parties are before the Court, and that the Court has jurisdiction of the parties and of the subject matter.

B. It is stipulated that all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.

C. The parties stipulate to the following facts:

1. Plaintiff's employment with Defendant was at-will and she had no employment contract with Defendant at any time during her employment.

1. Plaintiff began work for Defendant Presbyterian Hospital on December 6, 1999. She was assigned to the Wesley Care Center as a Certified Nursing Assistant I.

2. During the relevant time period, Defendant Presbyterian had an Equal Employment Opportunity policy in compliance with federal, state and local civil rights and employment legislation. A true and accurate copy of same is behind Tab 12(f) in Defendant's Exhibit Notebook.

3. During the relevant time period, Defendant Presbyterian had a policy specifically prohibiting the harassment, whether sexual or discriminatory, and intimidation, regardless of race, color, religion, sex, national origin, age, disability or veteran's status, of its employees. A true and accurate copy of same is behind Tab 12(b) in Defendant's Exhibit Notebook.

4. During the relevant time period, Defendant Presbyterian had a policy encouraging employee growth and development for all employees regardless of race, color, religion, sex, national origin, age, disability or veteran's status. A true and accurate copy of same is behind Tab 12(c) in Defendant's Exhibit Notebook.

5. During the relevant time period, Defendant Presbyterian had a progressive discipline policy intended to improve and correct poor employee performance and behavior without being subject to immediate termination in most instances. The progressive discipline policy included three progressive steps: documented oral warning, written warning/probation, and discharge. A true and accurate copy of same is behind Tab 12(d) in Defendant's Exhibit Notebook.

6. Plaintiff began working in the Wound Care Center ("WCC") full-time on December 26, 2004 as a Certified Nursing Assistant ("CNA") II.

7. The WCC is and was during the relevant time period a department of Defendant Presbyterian Hospital. The WCC provided medical services to patients with non-healing wounds.

8. On August 1, 2005, the WCC moved into the Meridian Healthcare offices. Meridian Healthcare is a Presbyterian affiliated entity.

9. At that time, Wendy George, a registered nurse, was the practice manager of Meridian Healthcare.

10. Concurrent with the move, Ms. George became the acting practice manager for the WCC and Plaintiff's direct supervisor.

11. Jan Pickett, a nurse practitioner, was assigned to the WCC during the relevant time periods.

12. Tammy Hay, M.D. is an emergency room physician who was assigned to the WCC during the relevant time periods.

13. On August 29, 2005, Ms. George transferred Plaintiff from her position as CNA II to Patient Service Coordinator/Medical Records. Plaintiff's rate of pay and hours worked did not change with this move.

14. On September 7, 2005, Ms. George met with the WCC staff to discuss written guidelines detailing employee performance expectations. Each employee was told to review the written guidelines, sign the form acknowledging receipt of the guidelines and return them to Ms. George by September 14, 2005.

15. These written guidelines specifically required Plaintiff, then working in Medical Records, to pull all patient charts for the following day's appointment in the morning so any files missing or located in other Presbyterian departments could be retrieved in advance of the patient's appointment. A true and accurate copy of same is behind Tab 7 in Defendant's Exhibit Notebook.

16. Plaintiff did not return the written guidelines until September 21, 2005.

17. Ms. George, Ms. Pickett and Dr. Hay met with Plaintiff on September 21, 2005 regarding her failure to return the written guidelines as instructed.

18. Ms. George met with Plaintiff on September 23, 2005 regarding her failure to pull patient charts according to the written

guidelines. Ms. George terminated Plaintiff. The written Discharge document states, "On 9/16 and 9/21, it was explained to Plaintiff the importance of following the written guidelines. It was explained to her why we had put these in place and their benefit. Again on 9/23/05 at 2:30, the charts had not been pulled for Monday, no records had been requested from the hospital." A true and accurate copy of same is behind Tab 10 in Defendant's Exhibit Notebook.

19. During the relevant time period, Defendant Presbyterian had an employee complaint resolution and appeals procedure in place which gave employees an opportunity to express concerns and to appeal employment decisions. A true and accurate copy of same is behind Tab 12(e) in Defendant's Exhibit Notebook. The appeals procedure allows the opportunity for review of an employment decision to ensure that a fair decision was reached.

20. On September 15, 2005, Plaintiff met with Joanna Holder to discuss her employment. According to written documentation of the meeting, Plaintiff reported that she had been moved to Medical Records because she didn't like change. She also reported that she had been replaced by two medical office assistants (MOAs) who were younger than Plaintiff and Caucasian. The written document indicates Ms. Holder left a telephone message for Ms. George on September 20, 2005 and spoke with her via telephone on September 21, 2005. A true and accurate copy of same is behind Tab 13 in Defendant's Exhibit Notebook.

21. On September 26, 2005, Plaintiff filed a formal appeal of her termination pursuant to Defendant Presbyterian's employee complaint resolution and appeals procedure. A true and accurate copy of same is behind Tab 13 in Defendant's Exhibit Notebook.

22. On October 7, 2005, Plaintiff met with Donna Vignogna, Novant Health Business Unit Leader, a white female, who spoke with Plaintiff and reviewed the events and documents leading up to Plaintiff's termination. Ms. Vignogna upheld Plaintiff's termination.

23. Plaintiff appealed Ms. Vignogna's decision. On October 24, 2005, Plaintiff met with Patrick Easterling, Vice President, Finance, a white male, who spoke with Plaintiff and reviewed the events and documents leading up to Plaintiff's termination. Mr. Easterling upheld Plaintiff's termination.

24. Plaintiff appealed Mr. Easterling's decision. On November 7, 2005, Plaintiff met with Mary Williams, Vice President, Employee Relations, EEO and Diversity at Novant Health, a black female, who spoke with Plaintiff and reviewed the events and documents leading up to Plaintiff's termination. After speaking with Plaintiff, Ms. Williams upheld Plaintiff's termination.

25. During the relevant time period, Defendant Presbyterian had a policy providing a confidential and anonymous method for employees to report wrongdoing. The policy provided employees with a 1-800 "hotline" service known as the "Alertline." The Alertline was administered by third party provider, Global Compliance Services. A true and accurate copy of same is behind Tab 12(f) in Defendant's Exhibit Notebook.

26. On September 21, 2005 at 9:09 p.m., Plaintiff first called the Alertline. A true and accurate copy of same is behind Tab 15 in Defendant's Exhibit Notebook.

27. On September 23, 2005 at 5:44 p.m., Plaintiff called the Alertline to report that she had been terminated for not following directions. Plaintiff also reported that she had pulled half of the files on her list before leaving for a computer training class that day. A true and accurate copy of same is behind Tab 15 in Defendant's Exhibit Notebook.

28. During the relevant time period, Defendant Presbyterian had in place an employee assistance program ("EAP"). EAP provided employees with access to counselors to discuss a wide range of topics from drug use to financial assistance to work-related support services.

29. On August 13, 2005 at 8:45 a.m., Plaintiff called EAP to report that "two employees were brought into her department from another department and that she and a coworker feel they are being pushed out. She said she has felt stress from role changes and also said that she feels the changes are unfair." A true and accurate copy of same is behind Tab 11 in Defendant's Exhibit Notebook.

30. On September 8, 2005, Plaintiff called EAP to report that the nurse practitioner in her department "brought 2 employees from another practice with her and one of them has taken [Plaintiff's] position; she is very upset; manager told her she was being moved to Medical Records [because] she was not taking patients' temps before she takes their pulse; she was never counseled about this and feels she was wronged; she is getting same pay but is doing

much more work; she will talk w/Employee Relations to find out if they took advantage of her." A true and accurate copy of same is behind Tab 11 in Defendant's Exhibit Notebook.

31. On September 23, 2005 at 6:00 p.m., Plaintiff called EAP to report that she was terminated that day and that "she had been experiencing significant stress at work feeling like her manager was looking for a reason to get rid of her. She said she needed her job and was not sure what she would do without one. She talked about specifics of what she was confronted for at work and the reason for her termination, which she felt was unfair." A true and accurate copy of same is behind Tab 11 in Defendant's Exhibit Notebook.

32. On September 26, 2005, Plaintiff went to EAP and requested a copy of her EAP chart following her termination. Plaintiff reported that she felt it was "due to discrimination and feels she did nothing to cause management to let her go." A true and accurate copy of same is behind Tab 11 in Defendant's Exhibit Notebook.

33. On October 6, 2005, Plaintiff applied for unemployment benefits with the North Carolina Employment Security Commission ("ESC"). A true and accurate copy of same is behind Tab 5 in Defendant's Exhibit Notebook.

34. On December 12, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Her Charge stated that she believed she was "discharged in retaliation for having engaged in protected activity" and that she believed she was terminated because of her race and her age. A true and accurate copy of same is behind Tab 6 in Defendant's Exhibit Notebook.

35. On October 23, 2006, the EEOC determined that it could not conclude that the information obtained during its investigation established a violation of the applicable statute and issued a Right to Sue letter. A true and accurate copy of same is behind Tab 6 in Defendant's Exhibit Notebook.

36. On February 6, 2007, Plaintiff filed her Complaint in this matter alleging discrimination based on her race and age and retaliation. A true and accurate copy of same is behind Tab 1 in Defendant's Exhibit Notebook.

III. **LEGAL OR FACTUAL CONTENTIONS UPON WHICH THE PARTIES HAVE BEEN UNABLE TO STIPULATE.**

   A. The parties have been unable to stipulate upon the following:

   1. The Defendant contends that Plaintiff failed to pull patient charts for the following day's appointments on the day she was terminated.
   2. The Defendant contends that Plaintiff was terminated for work performance issues including her failure to follow the reasonable instructions of her supervisors.
   3. The Plaintiff contends that she did not meet with Ms. George for any reason on September 16, 2005.
   4. The Plaintiff contends that she pulled the patient charts for the following day's appointments on the day she was terminated.
   5. Plaintiff will not stipulate to the following facts – her objection is based on relevance:
      a. On December 2, 2005, ESC determined Plaintiff was disqualified for unemployment benefits due to Plaintiff's misconduct as she was terminated for failing to follow a manager's instruction after being given repeated warning regarding the guidelines. A true and accurate copy of same is behind Tab 5 in Defendant's Exhibit Notebook.
      b. Plaintiff appealed ESC's determination. On February 22, 2006, Appeals Referee Joseph D. Pearlman heard Plaintiff's appeal. During the appeal hearing, Plaintiff's witness, Sharon Williams, testified under oath that she, not Plaintiff, pulled the patient charts on September 23, 2005. Mr. Pearlman upheld Plaintiff's disqualification from unemployment benefits stating she was discharged for misconduct connected with her work. True and accurate copies of the hearing transcript and cassette tape are behind Tab 4 and Tab 5 in Defendant's Exhibit Notebook.
      c. Plaintiff appealed Mr. Pearlman's determination. On April 13, 2006, ESC Chairman upheld Plaintiff's disqualification from unemployment benefits. A true and accurate copy of same is behind Tab 5 in Defendant's Exhibit Notebook.

VI. **DEFENDANT'S EXHIBIT LIST**

| Exh. No. | Description | Stipulation-Authenticity | Stipulation-Admissibility | Objections | Identified By | Admitted |
|---|---|---|---|---|---|---|
| 1 | Plaintiff's Complaint | XX | XX | | | |
| 2 | Defendant's Answer | XX | XX | | | |

461775 v.1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3 | Plaintiff's Deposition | XX | XX | | | | |
| 4 | Transcript of ESC Hearing | XX | | Relevance | | | |
| 5 | Plaintiff's ESC Documents Including Cassette Tape of ESC Hearing | | | Hearsay | | | |
| 6 | Plaintiff's EEOC Documents | XX | XX | | | | |
| 7 | Written Employee Guidelines | XX | XX | | | | |
| 8 | Documented Oral Warning dated 9.16.2005 | XX | XX | | | | |
| 9 | Written Warning and Attached Additional Notes dated 9.21.2005 | XX | XX | | | | |
| 10 | Discharge Notice dated 9.23.2005 | XX | XX | | | | |
| 11 | Transcripts/Screen Images of Plaintiff's EAP telephone calls | XX | XX | | | | |
| 12 | Novant Health Policies and Procedures | XX | XX | | | | |
| 13 | Plaintiff's Employee Relations File | XX | XX | | | | |
| 14 | Plaintiff's Signed Conditions of Employment dated 11.23.1999 | XX | XX | | | | |
| 15 | Transcripts of Plaintiff's Contact with Employee Alertline | XX | XX | | | | |
| 16 | Joanna Holder's Notes (type- & handwritten) from Conversation with Faye Freeze | | | Hearsay | | | |
| 17 | Joanna Holder's Notes (type- & | | | Hearsay | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | handwritten) from Conversation with Al Williams | | | | | |
| 18 | Joanna Holder's Typewritten Notes of Plaintiff's Termination Appeal Meetings | | | Hearsay | | |
| 19 | "The Future of Our Practice" Powerpoint Presentation | XX | XX | | | |

VII. **PLAINTIFF'S EXHIBIT LIST**

| Exh. No. | Description | Stipulation-Authenticity | Stipulation-Admissibility | Objections | Identified By | Admitted |
|---|---|---|---|---|---|---|
| 1 | Affidavit of Wendy George | XX | XX | | | |
| 2 | Affidavit of Joanna Holder | XX | XX | | | |
| 3 | Affidavit of Janet Smith-Hill | XX | XX | | | |
| 4 | Affidavit of Jan Pickett | XX | XX | | | |
| 5 | Plaintiff's Annual Performance and Competency Review from 2000-2004 | XX | | Relevance | | |
| 6 | Wesley Star Performance Awards in 2000 | XX | | Relevance | | |
| 7 | Merit Award in 2003 | XX | | Relevance | | |
| 8 | Novant Health Employee Handbook | XX | XX | | | |

VIII. **WITNESS LIST**

    A.    The following is a list of the names, addresses and a brief synopsis of the expected testimony of all known witnesses the Defendant may offer at the trial:

        1.    Janet Smith-Hill
Presbyterian Hospital
200 Hawthorne Lane
Charlotte, NC 28204;

Ms. Smith-Hill will testify as to applicable Presbyterian Hospital employment policies and as to general information regarding Presbyterian Hospital's compliance with its own policies and with state and federal employment laws.

        2.    Joanna Holder
Presbyterian Hospital
200 Hawthorne Lane
Charlotte, NC 28204;

Ms. Holder will testify as to her direct involvement with Plaintiff regarding her employment with Presbyterian Hospital under Supervisor Wendy George including the appeal by Plaintiff of her termination.

        3.    Wendy George
Presbyterian Hospital
200 Hawthorne Lane
Charlotte, NC 28204;

Ms. George will testify as to Plaintiff's work performance and related issues during the time Ms. George was her supervisor and leading up to Plaintiff's termination. She will testify that Plaintiff was terminated for legitimate, non-discriminatory reasons.

        4.    Jan Pickett
Presbyterian Hospital
200 Hawthorne Lane
Charlotte, NC 28204;

Ms. Pickett will testify as to Plaintiff's work performance and related issues both before and after Ms. George became Plaintiff's supervisor. She will testify that Plaintiff was terminated for legitimate, non-discriminatory reasons.

5. Dr. Tammy Hay
   Presbyterian Hospital
   200 Hawthorne Lane
   Charlotte, NC 28204;

   Dr. Hay will testify as to Plaintiff's work performance and related issues both before and after Ms. George became Plaintiff's supervisor. She will testify that Plaintiff was terminated for legitimate, non-discriminatory reasons.

6. Johnnie Mae Robinson (Plaintiff)
   6405 Castlewynd Court
   Charlotte, NC 28212;

7. Any and all witnesses identified or called by the Plaintiff.

B. The following is a list of the names, addresses, and a brief synopsis of the expected testimony of all known witnesses the Plaintiff may offer at the trial

   1. Johnnie Mae Robinson
      6405 Castlewynd Court
      Charlotte, NC 28212

      Ms. Robinson will testify as to her work performance before and after Wendy George became her direct supervisor. She will also testify that her termination was not for legitimate, non-discriminatory reasons.

   2. Faye Freeze
      10030 Gilead Road
      Huntersville, NC 28028

      Ms. Freeze will testify as to Ms. Robinson's work performance during the period that Ms. Robinson worked in the clinical area and medical records.

   3. Janet Smith-Hill
      Presbyterian Hospital
      200 Hawthorne Lane
      Charlotte, NC 28204;

      Ms. Smith-Hill will testify as to her knowledge as it relates to the Plaintiff in this case.

4. Joanna Holder
   Presbyterian Hospital
   200 Hawthorne Lane
   Charlotte, NC 28204;

   Ms. Holder will testify as to her knowledge as it relates to the Plaintiff in this case.

5. Wendy George
   Presbyterian Hospital
   200 Hawthorne Lane
   Charlotte, NC 28204;

   Ms. George will testify as to her knowledge as it relates to the Plaintiff in this case.

6. Jan Pickett
   Presbyterian Hospital
   200 Hawthorne Lane
   Charlotte, NC 28204;

   Ms. Pickett will testify as to her knowledge as it relates to the Plaintiff in this case.

7. Dr. Tammy Hay
   Presbyterian Hospital
   200 Hawthorne Lane
   Charlotte, NC 28204;

   Dr. Hay will testify as to her knowledge as it relates to the Plaintiff in this case.

8. Any and all witnesses identified or called by the Defendant.

### VII. PROPOSED VOIR DIRE

A. Defendant proposed the following additional Voir Dire questions to the Court:

   1. Do you know Plaintiff or her family?
   2. Have you or someone you know ever been employed by Novant Health or a related entity?
   3. Have you ever been sued?
   4. Have you ever been sued by a hospital?
   5. Have you ever had a bad experience with Novant Health or a

              related entity?
6. Have you ever had a bad experience with any hospital or health care provider?
7. Have you or someone you know been terminated by your/their employer?
8. Do you/they feel you/they were wrongly terminated?
9. What, if any, action did you/they take as a result?
10. Have you or someone you know been discriminated against because of your/their race?
11. Have you or someone you know been discriminated against because of your/their age?
12. What, if any, action did you/they take as a result?
13. Do you understand that you will be required to apply the law as instructed by the Court whether you agree with it or not?
14. Do you agree that an employer who is dissatisfied with an employee's attitude or work performance has the right to terminate that employee?
15. Do you understand that the term "at-will employee" means that the employee works at the will of the employer?
16. Do you agree that an employee who is at-will does not have a guarantee of continued employment in the absence of an employment contract?
17. Do you agree that an at-will employee may be terminated for any reason or no reason so long as it doesn't violate the law or public policy?
18. If so instructed by the Court, will you uphold an employer's right to terminate an at-will employee for any reason or for no reason so long as it doesn't violate the law or public policy?

B. Plaintiff intends to submit her proposed Jury Voir Dire questions under separate cover.

## VIII. PROPOSED JURY INSTRUCTIONS

A. Defendant proposes the following Jury Instructions:

1. The Court's General Introductory and Closing Instructions; and
2. Defendant's Proposed Jury Instructions previously filed with the Court.

B. Plaintiff intends to file her own proposed Jury Instructions under separate cover.

IX. **GENERAL REPRESENTATIONS**

    A.    Plaintiff and Counsel for the Defendant represent that all witnesses are available and the case is in all respects ready for trial. The probable length of the trial is estimated to be two (2) days.

    B.    Plaintiff and Counsel for the Defendant will immediately notify the Court in the event of settlement prospects.

Respectfully submitted, this the 5th day of November, 2008

        s/Patrick E. Kelly
        Patrick E. Kelly, NCSB No. 16703

        s/Kathleen K. Lucchesi
        Kathleen K. Lucchesi, NCSB No. 24386
        JOHNSTON, ALLISON & HORD, P.A.
        Post Office Box 36469
        Charlotte, North Carolina 28236
        Telephone: 704/332-1181
        pkelly@jahlaw.com; klucchesi@jahlaw.com
        Attorneys for Defendant


        s/Lena Watts-Robinson
        Lena Watts-Robinson, NCSB# 35845
        7701 Sharon Lakes Road, Suite Y
        Charlotte, North Carolina 28210
        Telephone: 704/552-0888
        lawofficeoflena@bellsouth.net
        Attorney for Plaintiff


Signed: November 13, 2008

*Frank D. Whitney*
United States District Judge